**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

IAN ANDRE PERSAUD, a/k/a Mark
Persaud, a/k/a Baby Face Persaud,
            *Defendant-Appellant.*

No. 03-4109

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

DAVID PEREZ GARCIA,
            *Defendant-Appellant.*

No. 03-4139

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Lyle E. Strom, Senior District Judge.
(CR-01-36-S)

Submitted: December 22, 2003

Decided: February 12, 2004

Before LUTTIG, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

Christopher C. Fialko, RUDOLF MAHER WIDENHOUSE & FIALKO, Charlotte, North Carolina; Richard E. Beam, Jr., HUB-BARD & BEAM, Gastonia, North Carolina, for Appellants. Gretchen C. F. Shappert, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Ian Andre Persaud (Appeal No. 03-4109) and David Perez Garcia (Appeal No. 03-4139) appeal their convictions by jury and sentences on a charge of conspiracy to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846 (2000). The charges stemmed from their participation in a large scale narcotics operation based out of Las Vegas, Nevada in which large quantities of cocaine were distributed to individuals in Charlotte and Greensboro, North Carolina who then cooked the cocaine into cocaine base for further distribution. The district court found that 21 U.S.C. § 851 (2000), applied to Persaud, and sentenced him to life imprisonment and a ten-year term of supervised release. The district court sentenced Garcia to 360 months' imprisonment and ten years of supervised release.

Persaud first challenges the district court's limitation of the cross-examination of the government's witnesses at trial, in particular, Shawn Marshall, a co-conspirator, and Agent Gary Cullop.[1] Persaud asserts that his defense theory was that Marshall was testifying falsely

---

[1]He also claims error in the district court's limitation of examination of Detectives John Fish and John Sturm.

against him to avoid prosecution for several murders, and in an effort to reduce his twenty-eight year sentence imposed on a state drug conspiracy conviction, and complains the district court's repeated limitation or prohibition of his cross-examination regarding those murders and Marshall's specific efforts to avoid apprehension constitutes reversible error. Specifically, Persaud asserts that the district court erred in limiting his attempts to demonstrate to the jury that Marshall was testifying against Persaud in an effort to curry favor with authorities relative to a murder warrant that had not yet been served on him, and that the district court should have allowed defense counsel to question Agent Cullop regarding his attempts to serve the warrant on Devon Smith, a.k.a. Marshall while he was in federal custody.[2]

We review for abuse of discretion the district court's limitations of a defendant's cross-examination of government witnesses. *United States v. Turner*, 198 F.3d 425, 430 (4th Cir. 1999). Trial courts generally are given wide latitude to set reasonable limits on cross-examination to prevent harassment, prejudice, or confusion of the issues. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Review of the record reveals that the jury was fully apprized of Marshall's numerous aliases, his involvement in several robberies, his presence at a homicide and violent shooting, his flight from police in March 2001 including the striking of a policeman's car, his twenty-eight year federal prison sentence, his use of false identifications, and the possibility of a Fed. R. Crim. P. 35 downward departure motion. Cross-examination of Marshall by defense counsel spanned over two days and is contained in over 100 pages of trial transcript. Defense counsel questioned Marshall regarding whether he shot and murdered two people in New York on New Year's Eve of 1995. Once Marshall denied involvement, the district court did not permit defense counsel to inquire into the details of the homicides, and denied defense counsel's efforts to elicit testimony as to whether Marshall knew there

---

[2]During an offer of proof, Agent Cullop testified he was prevented from serving the Abbott murder warrant on Marshall because of a federal policy and that after Marshall was sentenced to twenty-eight years' imprisonment and began cooperating with the government, the state prosecutor dismissed the murder charge against Marshall.

remained an arrest warrant outstanding for his arrest in New York relative to the murder of Richard Lee Abbott.

A thorough reading of Marshall's cross-examination demonstrates that defense counsel was afforded reasonable opportunity to explore Marshall's motive for testifying and to demonstrate Marshall's propensity to say whatever happens to be in his best interest at the time. The district court allowed arguments of counsel and even allowed defense counsel the opportunity to present proffered evidence and testimony on the issue, and his ruling was made after careful consideration.

We find the district court was within its discretion to deny defense counsel the leeway to pursue details of a murder of which Marshall had not been convicted, after Marshall denied his involvement in it. In addition, the district court's limitation of Agent Cullop's cross-examination, based upon the same rationale as its limitation on Marshall's testimony, was not error, nor was the district court's limitation of cross-examination of Detectives Fish and Sturm. There is no showing of abuse of discretion by the district court relative to defense counsel's access to witnesses on cross-examination.

Persaud next asserts error in the district court's denial of his motions to dismiss the indictment due to lack of proper venue. He asserts the evidence showed that David Garcia organized the drug conspiracy in Las Vegas, recruiting drivers and packaging the cocaine in minivans, delivering the cocaine to various customers, including Marshall and his partner, Persaud, in Greensboro, as well as to Conde and Bowman in Charlotte. According to Persaud, the government lacked venue in the Western District of North Carolina because it failed to demonstrate that Marshall or Persaud ever dealt drugs with or conspired with Conde or Bowman.

We review *de novo* questions of law regarding venue. *United States v. Stewart*, 256 F.3d 231, 238 (4th Cir. 2001). 18 U.S.C. § 3237(a), expressly provides that a conspiracy offense begun in one district and completed in another, may be prosecuted "in any district in which such offense was begun, continued, or completed," and the defendant need not have been present in the district in which the pros-

ecution is initiated. *United States v. Smith*, 198 F.3d 377, 382 (4th Cir. 1999).

Here, the government demonstrated that a conspiracy existed and that overt acts in furtherance of the conspiracy were committed in the Western District of North Carolina. The supplier and deliverers of the cocaine, David Garcia, Pavel Gomez, and Ramon Garcia, traveled regularly between Las Vegas and the two North Carolina distribution sites—Charlotte and Greensboro. Distributors for the conspiracy, Bowman and Conde, traveled from Charlotte to Greensboro on several occasions facilitating drug deals. Conde identified Persaud as one of David Garcia's "connections" in Greensboro who was present while Marshall cooked the cocaine into crack cocaine, and he linked the Las Vegas and North Carolina portions of the conspiracy together when he operated as a translator and money counter for David Garcia in Greensboro facilitating drug sales.

Contrary to Appellants' contentions, the government presented sufficient trial evidence linking Conde, Bowman, and David Garcia to Greensboro and to Persaud and Marshall's portion of the drug distribution operation. We find that the government satisfied its burden of proof regarding venue. *See Smith*, 198 F.3d at 382.

Appellants next assert the district court should have dismissed Count One of the bill of indictment because 21 U.S.C. § 841 is facially unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because § 841 requires that drug quantity findings be made by a sentencing judge by a preponderance of the evidence rather than by a jury beyond a reasonable doubt. We review *de novo* challenges to the validity or constitutionality of an indictment. *United States v. Bolden*, 325 F.3d 471, 490 (4th Cir. 2003).

We previously have considered the constitutionality of § 841 in light of *Apprendi*, and found that the statute passes constitutional muster. *United States v. McAllister*, 272 F.3d 228, 232 (4th Cir. 2001). We decline to hold otherwise here, and find no error in the district court's refusal to dismiss the indictment on that ground.

Appellants next assert error by the district court in not sentencing them according to the drug amounts found by the jury as essential ele-

ments of the indicted crimes, contending that the alleged error violates *Apprendi*.[3] Specifically, the jury was instructed that they were required to decide whether a specific statutory amount of drugs was proven beyond a reasonable doubt, and found that Persaud and Garcia each were responsible for fifty grams or more of cocaine base and five kilograms or more of cocaine powder. The basis of Appellants' complaint is that the district judge then made a specific finding at sentencing regarding the amount of drugs actually foreseeable to them, *i.e.*, 150 kilograms of cocaine and 50 grams of crack cocaine each, based on a preponderance of the evidence, thus increasing their base offense levels from thirty-two to thirty-eight months.

This claim has no merit. *Apprendi* requires only that the threshold drug quantity be submitted to the jury, which was done here. *United States v. Promise*, 255 F.3d 150, 152, 156-57 (4th Cir. 2001) (en banc), *cert. denied*, ___ U.S. ___, 122 S. Ct. 2296 (2002). Also, the jury's conclusion regarding drug quantity triggered the sentencing provisions of 21 U.S.C. § 841(b)(1)(A), subjecting Persaud and Garcia to a maximum sentence of life imprisonment. Finally, we have determined that *Apprendi* does not apply to a judge's exercise of sentencing discretion within the statutory range if the sentence does not exceed the statutory maximum, which in this case it did not. *United States v. Kinter*, 235 F.3d 192, 199-200 (4th Cir. 2000); *see also Harris v. United States*, 536 U.S. 545, 557 (2002); *United States v. White*, 238 F.3d 537, 541 n.4 (4th Cir. 2001).

Persaud next asserts error in the district court's enhancement of his sentence pursuant to 21 U.S.C. § 851, because the two prior felony drug convictions on which the enhancement was based were not proven to a jury beyond a reasonable doubt, and the enhancement increased his statutory penalty from twenty years to life to mandatory life imprisonment. He does not challenge the sufficiency of the government's notice of intention to seek enhanced penalties, or the validity of the prior felony drug convictions. We find the fact that the felony drug convictions on which the § 851 enhancement was based

---

[3]In failing to make a timely and sufficient *Apprendi* sentencing objection in the trial court, Garcia failed to preserve his objection, and we therefore review his objection for plain error. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993).

were not proven to a jury does not render application of the enhancement improper. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

Finally, both Persaud and Garcia challenge the district court's denial of their motions for judgment of acquittal, based on sufficiency of the evidence. We review *de novo* the district court's decision to deny a motion for judgment of acquittal. *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998). In evaluating the sufficiency of the evidence to support a conviction, the relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). If there exists substantial evidence to support a verdict, viewing the evidence most favorable to the government, the verdict must be sustained. *Glasser v. United States*, 315 U.S. 60, 80 (1942).

In resolving issues of substantial evidence, we do not weigh evidence or review witness credibility, and we assume that the jury resolved all contradictions in testimony in favor of the government. *United States v. Romer*, 148 F.3d at 364. Even the uncorroborated testimony of an accomplice may be sufficient to sustain a conviction. *United States v. Burns*, 990 F.2d 1426, 1439 (4th Cir. 1993).

In support of their claim of insufficiency of the evidence, Appellants contend that each of the government's informant witnesses lacked sufficient credibility to support the jury's reliance on their testimony, citing their actions as drug users and runners, use of aliases, and bias based on their efforts to obtain more favorable sentences or avoid prosecution. We deny Appellants' request for a credibility evaluation of the witnesses. *Romer*, 148 F.3d at 364.

For the foregoing reasons, we affirm Persaud's and Garcia's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*